UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

S.A.A.,                                                                    Case No. 21-CV-2071 (PJS/DJF)

              Plaintiff,

v.                                                                  ORDER

SAMANTHA GEISLER, Maple Grove
Police Officer,

              Defendants.

---

       Nicholas Sweeney, BRAZIL LAW GROUP, for plaintiff.

       Julia Kelly, Jason M. Hiveley, and Aaron M. Bostrom, IVERSON REUVERS, for defendant.

       Law-enforcement officers executing a routine search warrant knocked on the front door of plaintiff S.A.A.'s house during daylight hours.  S.A.A.'s husband responded to the officers' knocks by grabbing a gun and shooting at them.  After taking cover, the officers ordered S.A.A. and her husband to exit their home.  S.A.A. and her husband complied, and defendant Maple Grove Police Officer Samantha Geisler handcuffed S.A.A. and placed her in a squad car.  S.A.A. brought this lawsuit against Geisler, alleging that Geisler used excessive force.  The matter is now before the Court on Geisler's motion for summary judgment.

I. BACKGROUND

*A. Factual Allegations*

At about 4:20 pm on January 7, 2020, Dayton Police Sergeant Greg Burstad and four Maple Grove police officers (including Geisler) arrived at the home that S.A.A. shared with her husband to execute a search warrant. 3d Am. Compl. ¶ 18 [ECF No. 61]. One of the officers knocked on the front door. S.A.A. and her husband did not know who was pounding on their front door, or why, so they reacted in fear—which culminated in S.A.A.'s husband firing gunshots out of their home toward the police. *Id.* ¶ 22. Fortunately, none of the officers was killed or injured. After a 911 operator convinced S.A.A.'s husband that the people at his door were police officers, S.A.A. and her husband complied with the officers' instructions to exit their home. *Id.* ¶¶ 24–26.

At the time of these events, S.A.A. was 38 weeks pregnant. *Id.* ¶ 15. Her husband told the officers of his wife's pregnancy as he exited their home. *Id.* ¶ 25. Nevertheless, S.A.A. alleges that when she followed the officers' instructions and walked outside toward Geisler:

> Officer Geisler told Plaintiff to put her hands behind her back. Plaintiff complied and officer Geisler violently threw Plaintiff down onto her knees onto the cold concrete driveway. Officer Geisler then slammed Plaintiff's pregnant belly down onto the driveway forcing her to lie prone to the ground. Plaintiff screamed in agony and told officer Geisler that she was pregnant. Officer Geisler then handcuffed Plaintiff in the front of her body. Plaintiff's knees were

> bleeding, her belly had a red mark, and she immediately had severe back pain.

*Id.* ¶¶ 27–28.

Geisler disputes S.A.A.'s version of events. The parties agree, however, that S.A.A. was arrested, placed into a squad car, and eventually transferred to the Hennepin County Jail. *Id.* ¶¶ 29–30. Overnight and into the following day, S.A.A. began to experience symptoms of labor. *Id.* ¶¶ 33–36. On the morning of January 9, her water broke, and she was transferred to the Hennepin County Medical Center. *Id.* ¶¶ 37–39. Later that evening, she gave birth to a healthy boy. *Id.* ¶ 52.

### B. Procedural History

S.A.A. filed this lawsuit in September 2021, alleging that Geisler (and other defendants who have since been dismissed) violated S.A.A.'s rights during the course of her arrest and detention. ECF No. 1. Since filing this lawsuit, S.A.A. has amended her complaint three times. *See* ECF Nos. 5, 14, 61. The operative third amended complaint was filed on May 27, 2022. ECF No. 61. In that complaint, S.A.A. brings three claims against Geisler: (1) a § 1983 claim for false arrest in violation of the Fourth Amendment; (2) a § 1983 claim for excessive force in violation of the Fourth Amendment; and (3) a state-law claim for intentional infliction of emotional distress. *See id.* ¶¶ 96–106, 123–128.

Geisler moved for summary judgment on March 27, 2023.  ECF No. 96.  In her brief, Geisler argued (among other things) that S.A.A. had failed to plead any of her claims against Geisler in her individual capacity.  Eight days after Geisler filed her motion and brief (i.e., on April 4), S.A.A. filed a motion for leave to amend her complaint a fourth time to add individual-capacity claims against Geisler.  ECF No. 103.  On April 18, Magistrate Judge Dulce Foster held a hearing on S.A.A.'s motion and denied it from the bench.  ECF No. 113.  Three days later, S.A.A. appealed Judge Foster's decision to this Court.  ECF No. 116.  Meanwhile, the parties finished briefing Geisler's summary-judgment motion.

This Court heard oral argument on Geisler's motion and S.A.A.'s appeal of Judge Foster's order on June 9, 2023.  ECF No. 123.  For the reasons that follow, the Court grants Geisler's motion, overrules S.A.A.'s objection to Judge Foster's order, and denies S.A.A.'s motion to amend her complaint a fourth time.

## II.  ANALYSIS

S.A.A.'s federal claims against Geisler arise under 42 U.S.C. § 1983.  As any civil-rights attorney knows, a plaintiff may assert § 1983 claims against a public official in her official capacity or in her individual capacity.  "[T]hese are different causes of action." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007).  While Geisler disputes S.A.A.'s account of what happened on the afternoon of January 7, 2020, Geisler's primary

argument in favor of summary judgment is that S.A.A. did not plead any of her § 1983 claims against Geisler in her individual capacity, and S.A.A. does not have a viable official-capacity claim.

S.A.A. concedes that she does not have a viable official-capacity claim against Geisler. She maintains, however, that her third amended complaint—although perhaps inartfully drafted—put Geisler on notice that S.A.A. was asserting claims against her in her individual capacity. In the alternative, S.A.A. argues that she should be granted leave to amend her complaint a fourth time to clearly plead that her claims are made against Geisler in her individual capacity.

### A. The Complaint Fails to Plead Individual-Capacity Claims

The Eighth Circuit has held—many times, and very clearly—that "[i]f a plaintiff's complaint is silent about the capacity in which [she] is suing the defendant, [the court should] interpret the complaint as including only official-capacity claims." *Baker*, 501 F.3d at 923 (quoting *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) and citing *Nix. v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)); *see also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity.").

S.A.A. admits that none of the four complaints that she has filed in this action expressly says that she is suing Geisler in her individual capacity. *See* Pl. Memo. Opp. S.J. ("Pl. Memo.") at 13 [ECF No. 111] ("Plaintiff did not explicitly state in this Complaint or any subsequent complaint that these claims were against Geisler in her individual or official capacity."); *see also* Compl. [ECF No. 1]; Am. Compl. [ECF No. 5]; 2d Am. Compl. [ECF No. 14]; 3d Am. Compl. [ECF No. 61]. But S.A.A. contends that various parts of her third amended complaint *imply* that she is suing Geisler in her individual capacity. S.A.A. points out, for example, that she included a punitive-damages claim, she did not name the City of Maple Grove or Maple Grove Police Departments as defendants, she did not include an explicit official-capacity claim against Geisler, and she did not identify an unconstitutional policy or custom.

Regardless of whether and to what extent the third amended complaint implies that Geisler is being sued in her individual capacity, the complaint does not satisfy the Eighth Circuit's bright-line rule that an individual-capacity claim must be *explicitly* identified as such. *See Baker*, 501 F.3d at 924 ("A 'cryptic hint' in plaintiff's complaint is not sufficient [to plead an individual-capacity claim.]" (quoting *Egerdahl*, 72 F.3d at 620)); *Murphy v. Arkansas*, 127 F.3d 750, 754–55 (8th Cir. 1997) (explaining that the court strictly enforces the requirement that individual-capacity claims be clearly pleaded); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a

public official in his or her individual capacity, a plaintiff must *expressly and unambiguously* state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." (emphasis added)).  As the Eighth Circuit explained in *Murphy*, "we do not require that personal capacity claims be clearly-pleaded simply to ensure adequate notice to defendants. We also strictly enforce this pleading requirement because the Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees." *Id.* at 755 (cleaned up).

S.A.A. protests that "[t]he Eighth Circuit is on a judicial island regarding this stringent pleading requirement."  Pl. Memo. at 17.  Whether or not S.A.A. is correct, this Court is bound by the decisions of the Eighth Circuit.  *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) ("The District Court . . . is bound, as are we, to apply the precedent of this Circuit."); *see also Wealot v. Brooks*, 865 F.3d 1119, 1130 (8th Cir. 2017) (Wollman, J., concurring) ("Our circuit's requirement of a clear statement that a defendant is being sued in an individual capacity may represent 'a lonely position' on the issue, but it is one that must be addressed to the court en banc.").  And whether or not the Eighth Circuit's rule is a good rule, it is crystal clear .

Applying the Eighth Circuit's rule—a rule that is well known, strictly enforced, and easy to comply with—the Court holds that S.A.A. failed to adequately plead an individual-capacity claim against Geisler.

### B. Motion to Amend

That is not the end of the matter, though.  S.A.A. argues in the alternative that she should be given leave to amend her complaint a fourth time in order to explicitly plead individual-capacity claims against Geisler.  Judge Foster already denied S.A.A.'s motion for leave to amend, *see* ECF No. 113, so the matter is before the Court on S.A.A.'s appeal from Judge Foster's order.  *See* ECF No. 116.

Ordinarily, this Court applies an "extremely deferential" standard of review to a magistrate judge's decision on a nondispositive matter, such as when a magistrate judge grants or denies leave to amend a complaint.  *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013) (citing *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007); Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a)), *aff'd sub nom. Magee v. Trs. of Hamline Univ.*, 747 F.3d 532 (8th Cir. 2014).  In this District, however, a magistrate's decision to deny leave to amend a complaint is reviewed de novo if the basis for the magistrate judge's decision is that the amendment would be futile because the new claims are not viable.  *See* D. Minn. LR 72.2(a)(3)(B) ("When a motion to amend a pleading is opposed on grounds of futility and a party seeks review

of the magistrate judge's determination of the issue of futility, the district court will review the futility determination de novo.").

In this case, Judge Foster did not deny S.A.A.'s motion to amend on grounds of futility. Still, because of the posture of this case—if S.A.A. is not granted leave to amend her complaint, what remains of her case will be dismissed—the Court will exercise its discretion to review Judge Foster's order de novo. Even under this more exacting standard of review, however, the Court concludes that Judge Foster did not err in denying S.A.A.'s motion to amend.

A motion to amend that is *timely* is analyzed under Federal Rule of Civil Procedure 15(a), which provides: "The court should freely give leave [to amend] when justice so requires." Here, however, S.A.A.'s motion was not timely. Under the scheduling order, the parties had until May 2, 2022 to amend their pleadings. ECF No. 26. S.A.A. did not move for leave to amend her complaint to explicitly plead individual-capacity claims until April 4, 2023—nearly a year after the deadline. Therefore, in order to be granted leave to amend, she must show good cause under Rule 16(b). *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).

"The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Id.* (quotations omitted). Courts generally do "not consider prejudice to the nonmovant [in the Rule 16 analysis] if the movant has

not been diligent in meeting the scheduling order's deadlines." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (cleaned up). If the movant has been diligent, then the Court will consider changes in the law, newly discovered facts, or other changed circumstances in deciding whether the movant has shown good cause for amending the scheduling order. *See id.*

According to S.A.A., she has shown good cause for her (very) late motion for leave to amend her complaint a fourth time because:

> Plaintiff was operating under the good faith belief and intent that her claims against officer Geisler were in her individual capacity. Immediately after Plaintiff was informed for the first time that Defendant believed the claims to be against her in her official capacity, she attempted to rectify this with an amended complaint and stipulation.

Pl. Memo. Supp. Mot. to Amend at 11 [ECF No. 105].

This explanation does not establish diligence or justify S.A.A.'s failure to explicitly plead her individual-capacity claims—in accordance with clear and well-settled Eighth Circuit law—prior to the scheduling-order deadline. The law did not change between May 2, 2022 (the deadline to amend) and April 4, 2023 (when S.A.A. filed her motion), and no new facts or circumstances arose, save that Geisler filed a motion for summary judgment. An opposing party's motion that relies on well-settled law does not provide good cause for missing the deadlines set forth in the scheduling

-10-

order.[1]  *Cf. Sherman*, 532 F.3d at 718 ("[T]his is effectively a concession that Winco did not explore the applicability of the preemption defense before the summary judgment stage of the litigation.  Had Winco been diligent, it would have performed this research at the outset of the litigation, and at least prior to the scheduled deadline for adding affirmative defenses."); *see also Rosillo v. Holten*, No. 13-CV-1940 (JNE/SER), 2014 WL 7357308, at *4–5 (D. Minn. Dec. 23, 2014) ("[T]he only possible justification for a late amendment that can be gleaned from Rosillo's submissions is that he believed from the start that he had properly pled an individual capacity claim against Holten, and therefore saw no reason to amend the pleadings within the deadline set by the Scheduling Order.  This does not satisfy the good cause standard.")

Moreover, this is S.A.A.'s *fourth* attempt to amend her complaint.  At the hearing on S.A.A.'s motion for leave to file her *third* amended complaint (which was also filed after the scheduling-order deadline), Magistrate Judge Bowbeer warned S.A.A.'s counsel of the importance of being diligent moving forward, and suggested that neither she nor a future magistrate would be lenient in the future:

---

[1]The Court also dismisses S.A.A.'s suggestion that she thought that she had adequately pleaded individual-capacity claims against Geisler.  In each of her first four complaints, S.A.A. pleaded claims against the now-dismissed defendants "in their individual and official capacities."  Compl. ¶ 77; Am. Compl. ¶ 77; 2d Am. Compl. ¶ 78; 3d Am. Compl. ¶ 79.  Clearly, then, she knew that it was necessary to expressly identify the capacity in which a defendant was being sued, and she knew how to do it.  Her failure to expressly plead the capacity in which Geisler was being sued was simply the result of sloppy lawyering.

> I expect you, Mr. Sweeney, to recommit yourself to
> following the rules and the practice pointers and the
> scheduling order because there may not be slack cut in the
> future. . . . You need to assume, Mr. Sweeney, as all counsel
> do, that th[e] next Magistrate Judge is going to hold you
> both to the letter and to the spirit of the local rules and the
> scheduling order and any practice pointers that Magistrate
> Judge may have.  So you don't want to be in a position of
> asking for slack to be cut in the future.

May 27 Hearing Tr. 31:23–32:1, 36:2–8 [ECF No. 79].[2]  The fact that S.A.A. did not include individual-capacity claims in any of her previous four complaints—even in response to Judge Bowbeer's blunt admonishment—further confirms that she has not been diligent or shown good cause.

The Court also rejects S.A.A.'s suggestion that an unpublished opinion from this District "liberalized" the good-cause standard.  Pl. Obj. at 6 [ECF No. 117] (citing *Portz v. St. Cloud State Univ.*, No. CV 16-1115 (JRT/LIB), 2017 WL 3332220 (D. Minn. Aug. 4, 2017)).  Putting aside the fact that a district judge cannot "liberalize" a standard imposed by the court of appeals, the *Portz* opinion simply applied settled law to the facts of that case—facts that are markedly different from those of this case.

First, the plaintiffs in *Portz* filed their motion to amend just *one day* after the deadline set by the scheduling order and months *before* the close of discovery and dispositive-motion deadline.  2017 WL 3332220 at *4.  In contrast, S.A.A. did not file her

---

[2]At the time that she provided this warning to S.A.A.'s attorney, Magistrate Judge Bowbeer was about to retire.

-12-

motion until almost a *year* after the deadline to amend pleadings and six months *after* the close of fact discovery. *See* ECF No. 89 (setting October 5, 2022 fact-discovery deadline).

Second, the *Portz* plaintiffs had a credible argument that the defendants' actions had "prevented Plaintiffs from receiving what they viewed as necessary information to bring these additional claims" before the deadline. 2017 WL 3332220 at *4. The same cannot be said of Geisler. S.A.A.'s motion was necessitated by her lawyer's failure to apply a clear legal rule that any competent civil-rights attorney would apply when drafting a complaint—or a first amended complaint, or a second amended complaint, or a third amended complaint. *Portz*, therefore, does not support S.A.A.'s argument that she demonstrated good cause for her late motion.

In sum, S.A.A. has not demonstrated good cause to amend the scheduling order to extend (by a year) the deadline to move for leave to amend her complaint. To the contrary, the lateness of S.A.A.'s motion is due to the inexcusable negligence of her attorney. It is unfortunate that S.A.A.'s claims against Geisler will be dismissed because of her attorney's mistakes, but ". . . clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993). As the Supreme Court has explained,

> Petitioner voluntarily chose this attorney as his
> representative in the action, and he cannot now avoid the

>consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Link v. Wabash R. Co.*, 370 U.S. 626, 633–634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)).

"This principle applies . . . here and requires that [S.A.A.] be held accountable for the acts and omissions of [her] chosen counsel." *Pioneer Inv. Servs.*, 507 U.S. at 397. Therefore, because S.A.A. has not adequately pleaded any individual-capacity claims against Geisler—and because she admits that her official-capacity claims against Geisler have no evidentiary support—the Court dismisses her federal claims with prejudice.[3]

---

[3] In the event that the Court's dismissal of S.A.A.'s federal claims is appealed and the Eighth Circuit concludes that this Court erred, the Court adds the following: If S.A.A. has adequately pleaded individual-capacity claims against Geisler (or should be given leave to file a fourth amended complaint pleading such claims), the Court would grant in part and deny in part Geisler's motion for summary judgment for the reasons stated on the record during the June 9, 2023 hearing. In particular, the Court would find that Geisler either had no involvement in, or is entitled to qualified immunity for, everything that occurred before S.A.A. ended up on her knees in the driveway and everything that occurred after Geisler placed S.A.A. in handcuffs in front of her belly. There are genuine issues of material fact that preclude summary judgment as to what happened in the couple of minutes between those two events.

*C.  State-Law Claim*

S.A.A.'s remaining claim—intentional infliction of emotional distress—arises under state law.  The parties are not diverse, and therefore the Court does not have original jurisdiction over that claim.  The Court has discretion to exercise supplemental jurisdiction over that claim under 28 U.S.C. § 1367(a), but, because the claims over which the Court has original jurisdiction are being dismissed before trial, the Eighth Circuit instructs this Court to decline to exercise supplemental jurisdiction over the remaining state-law claim.  *See Harvey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008).  Thus, S.A.A.'s state-law claim is dismissed without prejudice "so that it may be considered, if at all, by the courts of Minnesota."  *Id.* at 726.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Geisler's motion for summary judgment [ECF No. 96] is GRANTED.

2. Counts 3 and 4 of plaintiff's Third Amended Complaint [ECF No. 61] are DISMISSED WITH PREJUDICE AND ON THE MERITS.  Count 7 of the Third Amended Complaint is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 28, 2023                             s/Patrick J. Schiltz
                                                   Patrick J. Schiltz, Chief Judge
                                                   United States District Court